Isabella Cornog,

*vs.*

William D. Cornog and.Abner Cornog, Executors of Abraham Cornog, deceased, William Herbert, late Sheriff, Catharine Cornog, Sarah Cornog, Abraham T. Cornog, Frank Cornog, Isabella Cornog, Anna Cornog, Margaret Cornog, Henry Cornog, Ulysses Cornog, and Stephen Cornog, children and heirs at law of Abraham Cornog, deceased.

*New Castle, Sept. Term, 1869.*

In Delaware a widow is not dowable out of an equitable estate of her deceased husband.

The equity of redemption in lands mortgaged is, as against all persons except the mortgagee and his assigns, treated as the legal estate, and is subject to all the incidents of the legal estate. Therefore, under a foreclosure and sale of lands mortgaged by her deceased husband, the widow, though a party to the mortgage, is entitled to equitable dower out of the surplus proceeds after satisfying the mortgage.

The widow's equity in such case is to receive interest during her lifetime upon one-third of the surplus only, and not upon one-third of the whole proceeds of sale, even though two-thirds of the proceeds may besufficient to satisfythe mortgage.

Bill in Equity for an injunction, and to recover equitable dower.—This bill was filed to recover equitable dower out of the surplus proceeds of certain real estate which was sold under a mortgage executed by the husband and wife, in the husband's lifetime. The facts were these :

Abraham Cornog, deceased, in his lifetime, to wit : April 6th, 1857, together with his wife, the present com-

plainant, executed a mortgage of certain real estate, for $7,000, payable March 25th, 1862. Cornog died March 24th, 1868, leaving a will containing certain provisions for his widow and children, which, however, failed of effect in consequence of his insolvency. After his death, the mortgaged premises were sold at sheriff's sale under the mortgage, for $10,500. The debt, with interest and costs, was satisfied, leaving in the hands of the Sheriff, a surplus of $1,714.91. There were unsatisfied judgments against Cornog, at his decease, exeeding the surplus, to which it is applicable by the Sheriff, subject to the equity, if any, of the widow. Her claim by this bill is to dower out the surplus and is two-fold. (1st,) That *the whole fund* be invested for her benefit during her lifetime, the whole being less than one-third of the entire proceeds of the real estate ; or (2d,) that, at all events, *one-third part of the surplus* be so invested. The questions raised are whether, in this State, the widow is dowable, in equity, of the surplus proceeds of the lands sold under a mortgage of her deceased husband, she having joined in the mortgage ? and if so, then in what portion of the surplus proceeds is she so entitled ?

*Nields* for the complainant.

The seisin of Abraham Cornog, and his death, are admitted, also the fact and date of mortgage, the sale under it, and surplus. This raises the question whether the widow is dowable of the surplus.

1. In England, the question as to dower in an equity of redemption was unsettled until 1783. In 1732, in *Banks vs. Sutton*, 2 *P. Wms.*, 700, a widow was held dowable in an equity of redemption, though the mortgage was given before marriage. In 1783, in *Dixon vs. Saville*, 1 *Bro. C. C.*, 326, the widow was held not dowable, on the ground that it is a trust estate, and subject to the general

rule against dower in an equitable estate. This case was decided wholly upon precedent, and not on principle. It established the rule, and was followed until the Statute of 1834, when dower was given in an equity of redemption. This rule had its foundation in the nature of trusts *before* the Statute of Uses, when the *cestui que trust* had no *estate* for any purpose. The Statute reciting among the mischiefs that a widow is not dowable, made the use an estate. Then the husband was held entitled to curtesy in estates held under conveyances to uses ; but dower is denied. In *Banks vs. Sutton*, Sir J. Iekyll rightly held the widow to be ever more favored than the husband. *Dixon vs. Saville* is a decision not founded upon principle, and subsequently disapproved.

In 2 *Black. Com.*, 337, it is said that the equitable estate, being equivalent to the legal estate, was not subjected to dower, "more from cautious adherence to "precedents than upon any well-grounded principle."

In *Burgess vs. Wheat.*, 1 *Wm. Black.*, 110 *cited in Johns.* 281, Lord Mansfield characterized the rule as founded, not on reason, but practice founded on a wrong determination.

Lord Talbot remarked that the anomaly is presented here, that neither the widow of the mortgagee, nor of the mortgagor, is admitted : the former is excluded because it is the estate of the mortgagor, and yet his widow is also excluded. 2 *Chitty, Black.*, 108, *note* (30).

2. Contrary to the English practice, the American doctrine holds the widow dowable of an equity of redemption.

Laying aside the question as to dower out of equitable estates, *generally*, and considering the question as to equities of redemption, there is an essential difference between an equity under the English law and under ours ;

52

it there being purely an equitable estate, but *here* it is the real ownership, drawing to it all the incidents of the legal estate, except as against the mortagee, dower among the rest ; so that, as the mortgage is here regarded, the mortgagor is, as well for the purpose of dower as for all other purposes, " seised of the estate of inheritance," under the Act of 1816, subject to the mortgage, and the consequence of enforcing it. As to the doctrine in other states, it is *not* founded on statutes, as is contended.

As to Massachusetts, see 1 *Scrib. on Dower*, 460.

In New York, the cases cited by me of dower allowed out of surplus were as early as 1809 and 1810, and running as far back as 1804, prior to the statutes referred to. 1804, *Waters vs. Stuart*, 1 *Caines*, 47 ; 1809, *Jackson vs. Willard*, 4 *Johns*. 41 ; 1810, *Hitchcock vs. Harrington*, 6 *Johns.*, 290 ; 1810, *Collins vs. Torrey*, 7 *Johns.* 277 ; 1814, *Tabert, vs.* 1 *Johns. Ch.*, 45., 1821; *Titus vs. Nelson*, 5 *Johns. Ch.* 452 ; 1 *Scribner on Dower*, 450.

The decisions in this State favor the widow. *Robinson vs. Harris' lessee*, 3 *Harring.* 283, note ; *Cooch's lessee vs. Gerry*, 3 *Harring.*, 280. In the latter case it was held that the mortgagor is *the real owner* for all legal purposes, and the mortgagee treated only as a personal security, and the mortagor was permitted to defend in ejectment, as against a person other than the mortgagee.

In two cases in the Orphans' Court, dower was allowed out of the surplus of administrator's sale, after paying a mortgage.

*James Breman's estate*, in 1859 or 1860 ; *Enoch J. Flemming's estate*, in 1861, or 1862.

Here the widow had, first, her dower by metes and bounds, out *of the whole*, and the mortgage, as well as other debts, were thrown upon the residue.

The Fennimore case, in Kent county, affirms the widow's right in the surplus.

3. Then comes the real question, to what extent did the wife relinquish her dower by joining in the mortgage ?

The Dower Act of 1816, gives dower in all lands, of which the husband is seized during the coverture, unless relinquished by her own act. *Rev. Code,* 290, *Sec.* 1.

By joining in the mortgage, her relinquishment was *co-extensive with the mortgage,* so far as necessary to secure it. It precluded her dower so far, and only so far, as concerned the rights of the mortgagee—not as against any one else ; no one else could set up the mortgage, no stranger. The *existence* of the mortgage whithout foreclosure would not have barred her from an assignment of her dower out of the whole land. Now, the farm being sold under the mortgage, equity will treat the fund as substituted, and her rights, to the same extent, will attach to it. *Snow vs. Stevens,* 15, *Mass.* 277 ; *Collins vs. Terrey,* 7 *Johns.* 277.

4. Is the wife dowable in the surplus, as representing the equity of redemption, and to what extent ? I find no case in which, the surplus of the proceeds of sale under the mortgage being brought into Court, the widow has taken, as her dower, one-third of the whole proceeds, the two thirds being sufficient for the mortgage. But in all the cases decided, the claim was against a purchaser under the the mortgage, none against a stranger ; so that, as to such a case, it is still an open question ; and on the general principle that a stranger cannot set up the mortgage for any purpose, she must, as against them, be entitled to dower out of the whole, *i. e.,* out of the land before sale, and out of proceeds after sale. 1 *Scribner on Dower* 422, 532, 447.

In *Titus vs. Neilson, et al.,* 5 *Johns., Ch.,* 452, Chancellor Kent reviews the whole subject. This was a claim

by purchaser under the mortgage, and decree was allowed only on one-third of the surplus.

In *Hartshorne vs. Hartshorne*, 1 *Green's Ch., R.*, 349, the purchaser of a husband's equity took an assignment of mortgage and was not allowed to set it up against the widow's bill for dower. This decision does not give dower in the whole land, because the claim was against the assignee of mortgage.

·  In this case the claim is against a stranger to the mortgage, viz : the executors and heirs of the mortgagor or creditors of mortgagor. She is, therefore, entitled to one-third of the whole, subject to the satisfaction of the mortgage. The proceeds were $10,500 ; the amount due on the mortgage, $8,785,09. This leaves $1,714.99, less than one-third of the whole.

We claim to have the whole invested for the widow's benefit during her life, or at least one-third of this surplus ; and in either case, the defendants are to pay the costs. She is here from necessity, having made her demand, which was refused.

Under the Maryland practice, an annuity is purchased out of the proceeds, equal to the interest.

No claim is made to recover dower with respect to rents received by the executors.

*Harrington*, for the defendants.

*First.* There is no dower in equitable estates. It·is a legal right, and equity will not create it. 1 *Scribner on Dower*, 366. Before the Statute of Uses, there was no curtesy or dower in uses. The Statute converted the use into a legal estate, and so curtesy and dower, both, attached. Then followed the invention of trusts, as to which, though the Courts allowed curtesy, yet dower was refused. The

early decisions fluctuated. *Banks vs. Sutton* proceeded on the ground that the husband was entitled to a conveyance, and equity presumed that to be done which ought to be done ; and this was also confined to trusts *not* created by the husband. But at all events it has been over-ruled. *Chapman vs. Chapman*, 3 *P. Wms.* 229. *Atty, Gen. vs. Scott, Cas. Temp. Talbot*, 138 ; *Dixon vs. Saville*, 1 *Bro.*, 326 ; *D'Arcy vs. Blake*, 2 *S. and L.*, 387 ; 1 *Scribner on Dower*, 392 ; 4 *Kent Com.*, 43 ; *Park on Dower*, 58 *and* 62-63.

The Statute of 1833, (in the appendix to Scribner,) Sec. 2, gives dower in all equitable *estates.*

*Second.* In the United States, dower in equitable estates is allowed under statutes. (1.) In Massachusetts, in the early cases, the English rule was recognized, and it was held that the widow is barred as against a purchase of the equity, paying the mortgage and taking an assignment. *Masury vs. Putman*, 4 *Dane's Abr.* 183-676 ; *Popkin vs. Bumpstead*, 8 *Mass.* 491 ; *Bird vs. Gardner*, 10 *Mass.*, 364.

From this time, the practice in Massachusetts changed, and dower came to be allowed in the equity of redemption. Presumably, under Statute. 1 Scribner on Dower 28, referring to certain statutes, one in 1783, as giving dower in equities, also at page 450, referring to the Statute of 1798 as giving *right to redeem*, as well to the widow as other representatives of the husband, and to Statutes of 1836 and Statutes of 1860, expressly giving dower.

(2.) In New York, Scribner, at page 450, says the widow's right is " established, not only by judicial decision, but by legislative enactment." Chancellor Kent states the origin of the rule in New York. *Waters vs. Stuart*, 1 *Caine's Cas. in error* 47 (1804). The statutory provision as to foreclosure and sale after a husband's death,

giving dower in surplus, are 1 *N. Y. Rev. Stat.*, 740 *sec.* 6 ; 3 *Ib.* 31, *sec.* 6 ; cited 1 *Scribner on Dower* 476.

All the decisions cited are under the Statutes referred to. *Smith vs. Jackson*, 2 *Eden. Ch.*, 28 ; *Titus vs. Nielson*, 5 *Johns. Ch.*, 452 ; *Hawley vs. Bradford*, 9 *Paige*, 200 ; *Tabele vs. Tabele*, 1 *Johns. Ch.*, 45.

(3.) In Maryland, as to which, the practice was referred to by Mr. Nields but no cases cited. In 1818, dower was given by statute in equitable estates. 1 *Scrib. on Dow.*, 41 ; 3 *Dorsey*, 701. Under Statutes of 1715 and 1766 held not dowable,—not until the act of 1818. 1 *Scrib. on Dow.*, 452.

(4.) Other States are referred to in 1 Scrib. 402, &c.


*Third.* The law in this State. The remark of Chancellor Ridgeley quoted in *Robinson vs. Harris' lessee*, 3 *Harr.*, 283, was an *obitu dictum*, and was not made upon argument or consideration. It was certainly wrong as to English rule resting upon "hasty decision." It was "a "long established doctrine," so declared by Lord Hardwicke in *Godwin vs. Winsmore*, 2 *Atk.* 526.

See 1 *Scribner* 32, as to dower in Delaware. The course of the statutory law on the subject was as follows :

Act of 1683, 1 *Del. Laws, App.*, 16, *Sec.* 109 ; the old intestate law—wife one-third of "any estate." *Secs.* 110 and 172—another provision giving dower.

Act of 1693, 1 *Del. Laws, App.* 20. Sale of lands to pay debts ; dower under this, subject not only to creditors, but to power of devise by husband.

Act of 1697, *App.*, 24, Took away power to devise as against widow ; re-enacted in 1706. *App.*, 50.

Act of 1721, 1 *Del. Laws*, 31. Sale to pay debts, dower in lands of which husband died seized.

Act of 1742, 1 *Del. Laws*, 62. . Re-enacted.

Act of 1766, 1 *Del. Laws,* 419. No will to affect dower.

Act of 1816, Digest, 167. Then the Statute first made dower paramount to debts at large.

This Statute placed dower as it stood at common law, giving it only on lands of which husband had a *legal seisin* of an estate of inheritance, (except in cases of intestacy and claim against heirs.)

There is *no statutory* provision giving dower in equitable estates, or recognizing it except under the intestate law.

The course of judicial decisions are shown by two cases which we cite from Judge Harrington's notes— *Geo. Fennimore's estate in Kent, Mar. T.,* 1847—*Mrs. Darbey's claim for dower, Kent, Sept.* 1848. In the latter case *Comegy's,* in argument, cites cases from Ridgely's notes.

I think it uneccessary to discuss the claim to have the the *whole surplus* invested for widow.

The CHANCELLOR :

In this State, a widow is not dowable out of an equitable estate of a husband except in intestate lands. Our intestate law allows to the widow, dower, or, more properly speaking, her " thirds," out of any estate in lands, legal or equitable, which descend to the heir at law, the policy of this statute being to.place the widow on an equal footing with the heir. But for all other cases, the right of dower is defined by the Statute of 1816—*Rev. Code, Chap.* 87, *sec.* 1—which gives dower only when the husband shall die " seized of an estate of inheritance in any lands or tenements within this State," &c. The term seized, here used, has always been construed, in its common law sense, as applicable to legal estates only, and the Statute has been received as a declaration only of the common law rule

of dower. This was adjudged in several cases in the Orphan's Court, soon after the passage of the Statute of 1816. They are found in Chancellor Ridgely's manuscript notes. The case of Whittington Johnson's widow, 3*d. vol.*, 396, *in* 1821 ; *Lofland and wife vs. Phillips*, 4*th vol.*, 152, *in* 1823, *and Bloxom vs. Hudson*, 4*th vol.*, 238, *in* 1823. The decision by Chancellor Ridgely must be received as expressing his matured judgment upon the question. For they are subsequent to his dictum in *Robinson vs. Harris' lessee in* 1818, reported in 3d Harrington, note, to the effect that in this State the widow of a *cestui que trust* is entitled to dower. This dictum being for many years the only published expression of opinion by the Chancellor, threw some doubt upon the question, which was not removed until the year 1848, when, in the argument of a case of dower of great interest at the time, the unpublished decisions of 1821 and 1823 were brought to light, and these being approved and followed in the later case, the question was finally put at rest. The case last referred to was that of John M. Darby's widow, in the Orphans' Court of Kent county in 1848. On a most thorough consideration of the whole subject, this construction of the statute was adhered to, and the widow's application for dower refused out of lands in which her husband had held only an equitable estate, under alienation bonds. On appeal, this decision of the Orphans' Court was affirmed.

But it is equally well settled in this State that a widow is dowable out of an equity of redemption, except as against the mortgagee and his assigns, and that, whether the mortgage have been given prior to the marriage, or after the marriage, the wife joining in it. In the American Courts, mortgages, until foreclosure, though in form conveyances, are treated as securities for the payment of money, the mortgagee taking but a chattel interest, and the mortgagor remaining seized, legally, as well as equitably, with respect to all the world except the

mortgagee and his assigns. His estate, until foreclosure, is subject to the incidents which attach to the legal estate, being inheritable, devisable, subject to execution for the mortgagor's debts, and entitling the mortgagor to all the rights of a freeholder. This view of a mortgagor's estate, though originally held in courts of equity only, was gradually adopted by courts of law, even in England to a considerable extent, and it is remarked upon by Chancellor Kent as "one of the most splendid instances in the "history of our jurisprudence of the triumph of equitable "principles over technical rules, and of the homage which "those principles have received by their adoption in courts "of law." 4 *Kent Com.*, 158.

The English Courts, however, did not admit the equitable doctrine so far as to allow dower out of an equity of redemption. The inconsistency and injustice of denying dower out of the estate of a mortgagor and out of equitable estates generally, the same estates being held subject to curtesy and to other incidents of a legal estate, has been felt and acknowledged by English judges. But the decision in *Dixon vs. Saville*, 1 *Bro. C. C.* 326, in 1785, denying dower in an equity of redemption had become the accepted rule, and was so generally acted upon by purchasers that it was felt to be necessary for the security of titles to adhere to it, until the English Statute of 1833, which gave dower in equitable estates.—Lord Redesdale in *D'Arcy vs. Blake*, 2 *S. and L.*, 388. The American Courts being free to carry the equitable view of mortgaged estates to its logical results, have, uniformly, allowed dower in equities of redemption, 4 *Kent Com.*, 45. The leading cases are, *Snow vs. Stevens*, 15 *Mass.*, 277; *Hitchcock vs. Harrington*, 6 *Johns.*, 290; *Collins vs. Torrey*, 7 *Johns.*, 277; *Coles vs. Coles*, 15 *Johns.*, 319. It is not true, as was suggested in the argument, that this class of decisions is founded upon statutes of the several States. There are found, it is true, in the Revised Statutes of New York and of Massachusetts, clauses declaring the widow entitled to dower in

53

an equity of redemption; but the decisions cited from those states were all prior to the enactment of their Revised Statutes, and the provisions referred to are merely declaratory of the rule, as one which had been already judicially established. In this State *Cooch's lessee vs. Gerry* 3 *Harring.*,280,adopts fully the doctrine that the mortgagor's equity before foreclosure, and as against all persons not claiming under the mortgage, is to be treated as the legal estate, and the mortgagor, was in that case, permitted to recover in ejectment.

Dower has been uniformly allowed in our Orphans' Courts out of the lands of mortgagors ; and under sales of lands by executors and administrators for the payment of debts of decedents where there has been outstanding mortgages, the practice, without exception, has been to secure to the widow, interest on one-third of the surplus proceeds of sale, after discharging the mortgage debts. Such being our law allowing dower out of the equity of redemption before foreclosure, it results that a court of equity will, after foreclosure and sale, secure to the widow a corresponding interest in the surplus proceeds of sale. That is but an application of a general principle of equity, that rights attaching to land shall be preserved as against the fund resulting from any judicial conversion of the land into money ;—so that dower being allowed at law out of the equity of redemption in the land, courts of equity, following the law, allow an equivalent for the dower out of the product of the equity of redemption, which product is represented by the surplus proceeds after satisfying the mortgage. *Titus vs. Neilson*, 5 *Johns.*, *Ch. R.*, 453, is to this point. That was a bill for foreclosure filed in the husband's lifetime, to which the husband and wife were made defendants, together with a second mortgagee under a mortgage of the husband's equity. The wife had not joined in the second mortgage. After a decree for a foreclosure and sale of the premises, but before sale made, the husband died, whereupon the

widow, being already a party to the suit, filed a petition for dower in one-third the surplus proceeds after paying the first mortgage. Her claim was contested by the second mortgagee, but upon full consideration, the dower was allowed. So in *Tabele vs. Tabele*, 1 *Johns., Ch. R.*, 45 ; *Smith vs. Jackson*, 2 *Edw., Ch. R.*, 28 ; *Hawley vs. Bradford*, 9 *Paige, Ch. R.*, 200 ; *Keith vs. Trapier*, 1 *Bailey's Ch. R.*, 63 ; *Hartshorne vs. Hartshorne*, 1 *Green, Ch. R.*, 349.

But conceding to the widow equitable dower in the surplus, another question raised by the bill respects the extent of her right. The proceeds of sale were $10,500. The amount due on the mortgage $8,785.09, leaving a surplus of $1,714.99, *less than one-third of the whole.* The widow claims that this whole surplus be invested for her benefit, on the ground that, except as against the mortgagee, she is entitled, before sale, to dower in the whole estate, and, consequently, that after a sale, her dower attaches to one-third of the whole proceeds, except so far as the mortgage debt may exceed the two-thirds ; that as against the representatives and creditors of the mortgagor, who are the present defendants, her rights are as if the mortgage had never existed ; that a stranger to the mortgage cannot set it up.

This argument wholly overlooks the effect of a foreclosure and sale. The rule that a stranger to an outstanding mortgage cannot set it up against the widow, applies only to a mortgage not as yet foreclosed. Before foreclosure, the widow's relinquishment of dower, by her joining in the mortgage, remains contingent upon its being foreclosed. As yet, the mortgage money may be paid by the husband, or out of his personal estate after his decease ; or, the widow has, herself, the right, in equity, to redeem the mortgage ; and thus the equity of redemption to which her dower attaches, may become again the absolute estate. But by foreclosure and sale, the equity

of redemption is extinguished, and thereby her relinquish-
ment of dower, which before was contingent, has become
absolute. The case then, comes within that provision of
the Statute which bars dower in lands if the wife "shall
"have relinquished her right of dower therein by her own
"voluntary act, according to the existing laws of the
"State." Under that Statute the effect of a mortgage
foreclosed upon dower in the mortgaged premises is the
same as of an absolute conveyance in which the wife has
joined. If there remain other lands of the husband, she
takes her dower at law in them. If there remain, of the
proceeds of the mortgaged lands, a surplus, as to this she
has no right at law, of dower, properly speaking. But
equity treats the surplus proceeds after sale, as represent-
ing the equity of redemption in the land before sale ; and as
the widow had dower in one-third of the equity of
redemption, this Court allows her, as an equivalent, the
interest on one-third of the surplus proceeds. This was
the whole extent to which the Court went in *Titus vs.
Neilson*,* and it is in accordance with the uniform practice
of our Orphans' Court in applying the proceeds of lands
which have been sold to pay the debts of a decedent,
where there are mortgages paramount to dower to be
paid out of the proceeds. First, the mortgages are satis-
fied, then one-third the surplus is secured by bond and
mortgage for the benefit of the widow, the residue is
ordered to the executor or administrator, and the princi-
pal of the one-third is also secured to the executor or
administor, payable at the widow's decease.

---

*In *Hawley vs. Bradford*, 9 *Paige, Ch. R.*,200. The widow of a mortgagor
under circumstances similar to those of the present case, claimed interest on one-
third *of the whole proceeds* of the mortgaged premises on the ground that she
was equitably entitled, as a surety, to a preference over other incumbrances
than the mortgagee. But the Court held that the principle of suretyship did
not apply.

In the case of Fennimore's real estate in Kent, March T., 1847, the practice on this point came under review. Fennimore's administrator applied for an order to sell decedent's real estate *subject to dower*, the widow having declined to waive her dower by metes and bounds. The debts, consisted of a mortgage and several judgments, amounting in the whole, to more than the value of the real estate. The question was, whether the Court would allow a sale of all the lands *subject to dower*, and then give the widow dower out of the whole, and throw the judgment creditors on the residue, or whether it would so direct the sale as to pay the mortgage debt first and give the widow dower in the residue. The Court said, "The "widow is entitled to dower in all the lands of her hus-"band unless she shall have voluntarily relinquished her "right of dower,which she does by joining in a mortgage to "the extent of the mortgage,and in favor of the mortgagee. "Our order sells the lands absolutely, and discharges both "mortgages and judgment. It is, therefore, in effect, a "sale for satisfaction and in execution of the mortgage as "well as the judgments. How then, are the proceeds to "be applied ? Just as the parties' rights now are. The "mortgagor is paramount to the dower. It must be paid "first. The dower is preferred to the judgments. Dower, "therefore, must be allowed out of the residue, in prefer-"ence to the judgment creditors, as a sale on their liens "would be subject to the dower." The Court refused the order for sale subject to dower, inasmuch as it would result in giving the widow dower out of the whole instead of one-third of the surplus. Thereupon, the widow waived her dower by metes and bounds. A sale clear of dower was ordered, and the widow took her interest only in the surplus proceeds after payment of the mortgage.

In this case, the surplus is $1,714.91. A decree will be made that one-third of it, to wit : the sum of $571.64 be so invested that the income thereof may be paid semi-annually to the widow, and the principal remain subject

to the future order of the Court, and that the remaining two-thirds, after deducting two-thirds of the costs of this suit, be repaid to the Sheriff, to be applied by him according to law. One-third of the costs will be paid by the widow. This apportionment of the costs is in accordance with the general rule prescribed by the statute upon the assignment of dower in the Orphans' Court.