ELIZA S. WALKER, Administratrix of WILLIAM WALKER,
Deceased,

*vs.*

THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARM-
ERS' BANK OF THE STATE OF DELAWARE.

Kent, May T., 1887.

*Mortgages; transfer of equity of redemption by mort-
gagor to mortgagee; conveyances for security.*

1. Where a mortgagor executes to the mortgagee a deed of the mort-
gaged premises, absolute on its face, the court will view with
distrust and scrutinize with closeness the negotiation that led to
the making of such deed, whereby it is claimed by the mort-
gagee that the right of redemption was extinguished and the
previous mortgage converted into an absolute sale.

2. In equity, a conveyance, whatever form it may assume, will be
treated as a mortgage whenever it appears to have been taken as
a security for an existing debt or a contemporaneous loan, and
the inclination of the court is, in doubtful cases, so to treat it
and allow the grantor to redeem.

3. It is not essential to the validity of a purchase of the equity of
redemption by the mortgagee, that he be able afterwards to show
that he paid for the property all that any one would have been
willing to give.

4. The use of the prescribed form of legal process for enforcing a
mortgage upon land is not such an exercise of power by the
mortgagee over the mortgagor as a mortgagee in possession is
forbidden to use to obtain a conveyance of the realty from the
mortgagor.

5. Default having occurred on a real-estate mortgage, judgment was
recovered on *scire facias* upon the mortgage, and subsequently
*levari facias* was issued on the judgment. Thereupon (the mort-
gagee not being in possession) negotiations took place between
the parties, which resulted in the withdrawal of the *levari facias*
by the mortgagee, and the execution of a deed of the mortgaged
premises, by the mortgagor to the mortgagee, in satisfaction of

6

the indebtedness. Thereafter the mortgagee,—grantee in said deed—sold the property for more than enough to satisfy the indebtedness, and the mortgagor thereupon filed a bill against the mortgagee, alleging that the deed was procured by deception and fraud, and that it was intended as a mortgage, and praying that the surplus of the amount received by the defendant from the sale of the premises, over the indebtedness, be paid over to complainant. *Held*, on the facts, that there was no unfairness manifest in procuring the deed; that the mortgagor was not compelled in any manner to sell to the mortgagee otherwise than from the want of a better purchaser; that he did not sell to the mortgagee for less than others would have given; that the consideration for the conveyance was not inadequate, nor was it coupled with unfairness or oppression; and, hence, that there should be a decree for defendant.

BILL IN EQUITY.—This bill was filed to compel the payment of a sum of money alleged to be the difference between complainant's debt and the amount received from a sale of land by defendant holding a deed from complainant absolute on its face, alleged by complainant to have been intended as a mortgage.

William Walker was the original complainant. October 5, 1885, his death was suggested, and Eliza S. Walker, his administratrix, was made a party to the proceedings.

The facts are fully stated in the opinion.

*Beniah Watson* and *John P. Saulsbury*, for the complainant:

Whenever the relation of mortgagor and mortgagee is once shown to exist, a court of equity views with distrust and disfavor any arrangement between them by which it is proposed to transfer the equity of redemption to the mortgagee. The parties will be held to their original relation, unless the transaction shall appear perfectly fair and no advantage taken by the mortgagee by reason of his incumbrances. *Baugher* v. *Merryman*, 32 Md. 185;

*Villa* v. *Rodriguez,* 79 U. S. 12 Wall. 326, 20 L. ed. 406.

No matter how absolute a conveyance may be on its face, if the intention is to take security for a subsisting debt or for money lent, the transaction will be regarded as a mortgage and will be treated as such. Parol evidence is admissible to show that an absolute conveyance was intended as a mortgage. *Baugher* v. *Merryman,* and *Villa* v. *Rodriguez, supra.*

In determining whether a deed absolute on its face is to be allowed to have force and effect according to its import, or is to be declared, as between the parties, to have the effect of a mortgage only for the security of a subsisting debt, it is necessary to determine the manner in which the deed was procured and the object and purposes contemplated by the parties at the time it was executed as shown by all surrounding facts and circumstances. For this purpose parol testimony is admissible. *Baugher* v. *Merryman,* 32 Md. 186; *Hall* v. *Livingston,* 3 Del. Ch. 348.

The mortgagee may become the purchaser of the equity of redemption if he does not use his power over the estate to induce the mortgagor to part with it.

In equity a conveyance, in whatever form made, will be treated as a mortgage whenever it appears to have been taken as a security for an existing debt; and a court of equity, in doubtful cases, will so treat it, and allow the grantor the benefit of redemption. *Baugher* v. *Merryman,* 32 Md. 185; *Cornell* v. *Pierson,* 4 Halst. Ch. 478; *Horn* v. *Keteltas,* 46 N. Y. 605; *Bentley* v. *Phelps,* 2 Wood & M. 427; *Hughes* v. *Edwards,* 22 U. S. 9 Wheat. 489, 6 L. ed. 142; *Taylor* v. *Luther,* 2 Sumn. 228; *Babcock* v. *Wyman,* 60 U. S. 19 How. 289, 15 L. ed. 644; *Russell* v. *Southard,* 53 U. S. 12 How. 139, 13 L. ed. 927; *Morris* v. *Nixon,* 42 U. S. 1 How.

118, 11 L. ed. 69; *Reading* v. *Weston*, 8 Conn. 120; *Sellers* v. *Stalcup*, 7 Ired. Eq. 13; *Trucks* v. *Lindsey*, 18 Iowa, 504.

A parol trust, in the absence of any prohibitory statute, may be set up, even against the grantee under a deed absolute on its face, and without any allegation in the bill that the trust was intended to be declared in the deed and was omitted through fraud or mistake.

Parol evidence is admissible to establish a trust as against a deed absolute on its face, when the relation of the parties and the circumstances surrounding the making of the deed were such as that for the grantee to set up the form of the deed as conclusive would constitute a fraud against the grantor.

Such a parol trust may be established against an absolute deed by verbal admissions by the parties charged; and there is no such rule of evidence as to require in such a case proof of facts and circumstances *dehors* the deed and incompatible with the idea of a purchase.

In England, before the Statute of Frauds, 29 Car. II., uses and trusts might be proved by parol where the mode of conveying a legal estate was such as might be by any act *in pais* or by parol.

Section 7 of the English Statute of Frauds, requiring that trusts of lands be proved by writing, was never in force in this State, having been passed after the settlement of Pennsylvania, which then embraced what is now Delaware, and never having been adopted by statute or at common law in this State. *Murphy* v. *Hubert*, 7 Pa. 420; *United States Bank* v. *Carrington*, 7 Leigh, 566, 576; *Fleming* v. *Donahoe*, 5 Ohio, 255; cases cited in *Hall* v. *Livingston*, 3 Del. Ch. 348; *Pierce* v. *Robinson*, 13 Cal. 116; *Lodge* v. *Furman*, 24 Cal. 385; *Grey* v. *Tubbs*, 43 Cal. 358.

That fraud may be inferred from facts and circum-

stances, or from the condition of the parties, is well established. *McCormick* v. *Malin*, 5 Blackf. 509; *Highberger* v. *Stiffler*, 21 Md. 338; 1 Story, Eq. §§ 192, 193; 1 Kerr, Fr. 384; 2 Kent, Com. 484; Hill, Tr. § 145.

The defendant corporation having conveyed its title to a *bona fide* purchaser, Walker cannot, as against such purchaser or purchasers, redeem the premises. In such case the equity of redemption having been apparently destroyed, a court of equity will treat the defendant corporation as a constructive trustee for the balance in its hands after deducting from the price for which the land was sold the amount for which the defendant corporation held it as security. *Baugher* v. *Merryman*, 32 Md. 186; *Linnell* v. *Lyford*, 72 Me. 284; *Wyman* v. *Babcock*, 2 Curt. C. C. 386; *Dougherty* v. *McColgan*, 6 Gill & J. 276; *Henry* v. *Davis*, 7 Johns. Ch. 41; *Wilber* v. *Sanderson*, 43 Cal. 496; *Hyndman* v. *Hyndman*, 19 Vt. 10; *McLanahan* v. *McLanahan*, 6 Humph. 99; 72 Law Lib. 430–448; *Peugh* v. *Davis*, 96 U. S. 332, 24 L. ed. 775 ; *Baldwin* v. *Banister*, 3 P. Wms. 251; Perry, Tr. § 243; Hill, Tr. 144.

If a person obtains the legal title to property by circumvention, imposition, or fraud, or if he obtains it by virtue of a confidential relation and influence under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interest of the property, courts of equity will raise a trust by construction. Perry, Tr. p. 135, § 166. Counsel also cited : *Webb* v. *Rorke*, 2 Sch. & Lef. 661, 676; *Ford* v. *Olden*, L. R. 3 Eq. Cas. 461; *Hyndman* v. *Hyndman*, 19 Vt. 12; *Alexander* v. *Rodriguez*, 79 U. S. 12 Wall. 339, 20 L. ed. 410 ; Perry, Tr. §§ 192, 210; *Budd* v. *Van Orden*, 33 N. J. Eq. 147, 568; 1 Pow. Mort. 151 *a;* 1 Hill, Mort. 42; *Hughes* v. *Edwards*, 22 U. S. 9 Wheat. 494, 6 L. ed. 143 ; *Morris*

v. *Nixon*, 42 U. S. 1 How. 121, 11 L. ed. 70 ; *Strong* v. *Stewart*, 4 Johns. Ch. 167; *Slee* v. *Manhattan Co.* 1 Paige, 48, 77; *Westlake* v. *Horton*, 85 Ill. 229; *Perkins* v. *Drye*, 3 Dana, 176; *Crane* v. *Buchanan*, 29 Ind. 570; *Brogden* v. *Walker*, 2 Harr. & J. 285.

*N. B. Smithers*, for the defendant :

There are three questions in this case :

(1) Is there anything in the relation of mortgagor and mortgagee to prevent the latter from purchasing the interest of the former ?

(2) Was there in this case any trust, created by agreement of parties, that the bank should sell the lands conveyed to it, and after paying the debts refund the surplus ?

(3) Was there any trust as to such surplus, arising out of fraud or oppression by the creditor taking advantage of the ignorance or necessity of the debtor ?

I. Of the relation between mortgagor and mortgagee in England, see *Cholmondeley* v. *Clinton*, 2 Jac. & W. 183; *Knight* v. *Marjoribanks*, 2 MacN. & G. 10.

In Delaware.—A mortgage is but security for the payment of a debt; it creates no trust and establishes no fiduciary relation. The mortgagee has but a chose in action. *Cooch* v. *Gerry*, 3 Harr. 282; *Hall* v. *Tunnell*, 1 Houston, 326; *Cornog* v. *Cornog*, 3 Del. Ch. 416.

In New York.—*TenEyck* v. *Craig*, 62 N. Y. 421; *Remsen* v. *Hay*, 2 Edw. Ch. 534.

In Maryland.—*Hinkley* v. *Wheelwright*, 29 Md. 348.

Text-books.—2 Sugd. Vend. & P. 8th Am. ed. 412, 689; Jones, Mort. §§ 711, 712; 2 White & T. Lead. Cas. 1985.

U. S. Supreme Court.—*Russell* v. *Southard*, 53 U. S. 12 How. 154, 13 L. ed. 933 ; *Peugh* v. *Davis*, 96 U. S. 335, 24 L. ed. 776.

II. There was no trust created by agreement of parties.

If anything is capable to be proved by human testimony it is conclusively shown that the bank refused to accept the land subject to any such trust; that the deed was executed by Walker and wife with the full knowledge of such refusal. To ask a decree for such a trust is to ask a fraud on the bank.

III. There was no such trust arising out of fraud or oppression on the part of the bank.

There were but three ways by which the bank could realize its debt: By the mode prescribed by law against an unwilling debtor; by the voluntary payment by the debtor,—*i. e.*, in this case by the sale of his lands to third persons and the application of the proceeds to his indebtedness; by agreement between the debtor and creditor resulting in a purchase by the latter.

A sale by the sheriff was deprecated by Walker, who tried to sell at the instance of the officers of the bank, and failed.

IV. It is clearly established, by the testimony, that so far from desiring a conveyance it was the persistent advice of the officers of the bank that Walker should sell his own land; that not until after the trial of the 26th of December, 1882, and the utter failure, did the bank ever consider, with any favor, the proposition to convey; that in every instance the proposal for conveyance came from Walker; that the effort and failure to sell demonstrated to the bank that its debt was in danger by a public sale. Contrast *Villa* v. *Rodriguez,* 79 U. S. 12 Wall. 329, 20 L. ed. 406.

### Inadequacy of Consideration.

If the question were whether the deed, though on its face absolute, was in fact a mortgage, any great disparity

between the fair value of the property and the consideration given might, coupled with other evidence, be material to resolve the doubt. No such question can arise here, because the proof is full that the deed was executed with the distinct understanding that the bank would not. agree to pay. back any surplus. This narrows the question to one of fraud,—*i. e.*, that the inadequacy of consideration was so gross as to furnish proof of duress, and that the conveyance was made by a needy and unwilling debtor by oppression.

The actual difference between the total amount of sales and the indebtedness (expenses deducted) was about. $1,700. To aver that the disparity affords any evidence of fraud is monstrous. The debts had been discharged and the bank took all risks. *Hicks* v. *Hicks*, 5 Gill &. J. 85; *Wiest* v. *Garman*, 3 Del. Ch. 443.

THE CHANCELLOR.—On the 8th day of November,. 1873, William Walker executed a bond and mortgage in favor of the President, Directors, and Company of the Farmers' Bank of the State of Delaware, for the sum of $22,406.37. Mrs. Walker joined in the mortgage.

Fifteen different parcels of land were conveyed by this mortgage. An amicable *scire facias* was docketed, between the bank and Walker and wife, on this mortgage the 23d day of March, 1876, and judgment thereon was. recovered by the bank against them, for the said sum of $22.406.37, with interest from April 18, 1875.

The interest due by Walker and wife to the bank on this judgment being in arrear, a *levari facias* was issued on said judgment on the 26th day of January, 1881, proceedings on which were subsequently abandoned, Walker having made arrangements for the payment of his arrears. of interest. The interest being again in arrear, a second *levari facias* on said judgment was issued on the 8th

day of February, 1882. Walker again making provision for the payment of his arrears of interest, proceedings under the second writ of *levari facias* were abandoned.

On the 14th day of February, a third writ of *levari facias* was issued on said judgment; Walker being again in arrear with his interest, and the principal of said judgment being wholly due and unpaid.

On the 22d day of February, 1883, Walker and his wife executed a deed of conveyance to the bank for nine different parcels of the above-named lands; five of said parcels having been sold at public sale by Walker in the month of December previous, and one of said pieces, called the dry-house lot, being omitted from said deed for reasons clearly stated by witnesses who have been examined in the cause.

The consideration stated in the deed seems to have been nominal, being the sum of $26,000, the real consideration (as proved by the witnesses) being the release by the bank to Walker of his entire indebtedness to the bank, which then amounted to the sum of $25,277.36; also the payment by the bank of a mortgage, in favor of one Bespham, on which there appears to have been due about $6,988.67; and the payment of a judgment of one Pearson against the said Walker, on which was then due about $85.

The Dupont mortgage had been theretofore assigned to the bank. It and the Bespham mortgage and the Pearson judgment were liens upon the lands of Walker. The entire indebtedness of Walker to the bank, and on account of prior liens which the bank assumed to pay and did pay on the 22d day of February, 1883,—the date of the deed from Walker and wife to the bank,— was the sum of $32,351.32.

The bank subsequently, at private sale, disposed of all these nine parcels of land conveyed to it by Walker and

wife. The prices for which the bank sold these parcels aggregated the sum of $34,870. Of these six sold for $3,370, leaving for three parcels, $31,500.

The bank, in its answer, says that by far the greater part in value of these lands were sold by it on credit, and the consideration price for most of them has not yet been received by it, but remains unpaid; but it admits that the aggregate price for which it sold them exceeds the consideration price for which Walker sold them to the bank, to the amount of between $2,200 and $2,300.

The bill was filed by Walker in his lifetime, against the bank, to compel the payment by it of this amount, which he claims was equitably due him from the bank.

The question in the case is whether the deed of the 22d day of February, 1883, absolute in its terms, is to be allowed to have force and effect, according to its import, or be declared as between the parties to have the effect of a mortgage for the security of the subsisting debt. The determination of this question depends upon the manner in which the deed was procured, and the objects and purposes contemplated by the parties, and upon the intention of the parties at the time it was executed as shown by all the surrounding facts and circumstances.

The relation of mortgagor and mortgagee existing between the parties at the time of the execution of the absolute deed in question should cause the court, as has been often said in other cases, to view with distrust, and to scrutinize with closeness, the negotiation that led to the making of the deed whereby it is now claimed that the right of redemption has been extinguished and the previous mortgage converted into an absolute sale; or, in other words, whereby the complainant is debarred the right of recovering from the defendant the excess of amount of sales of the mortgaged property over the amount of the indebtedness of the complainant to the defendant at the time of the execution of the mortgage.

To sustain such a transaction as the sale, without the right of redemption, it requires that all the circumstances attending it should be perfectly fair and free from the least taint of advantage and imposition. While it is everywhere now recognized as true, whatever heretofore may have been the difference of opinion on that subject, that a mortgagee may become the purchaser of the equity of redemption, if he does not use his power over the estate, where he has such power, to induce the mortgagor to part with his interest in it, it is, nevertheless, the policy of the law to prohibit the conversion of a real mortgage into a sale. *Conway* v. *Alexander*, 11 U. S. 7 Cranch, 218, 3 L. ed. 321.

Although the equity of redemption may be sold or disposed of to the mortgagee, yet, unless the transaction appears to be fair and unmixed with any advantage taken by the mortgagee of the necessitous circumstances of the mortgagor, equity will hold the parties to their original relation of debtor and creditor. *Dougherty* v. *McColgan*, 6 Gill & J. 275.

In the case of *Baugher* v. *Merryman*, 32 Md. 185, the court says: "As the debt was not the appellee's and for which she was not personally bound, if the property was really worth more than the mortgage debt at the time, the appellant paid nothing for the right of redemption." Again: "That the proposal to convert the mortgage into a sale was made and urged by the appellant, is fully admitted in his answer; the alternative proposed being either an absolute sale of the property or an immediate foreclosure and sale. That the appellee was distressed and perplexed with such an alternative persistently pressed upon her, it is not difficult to conceive, and as a fact is fully shown by the proof in the cause. She had in fact no power of escape, having agreed to a decree for a foreclosure; the only chance of avoiding being turned out of house and home summarily was by yielding to the

appellant's demand for an absolute deed. This was an improper use of the mortgagee's power over the estate, to influence the mortgagor to part with the right of redemption, and such as a court of equity will not sanction."

In this case the mortgagee sold the mortgaged premises for more than twice the amount of the mortgage debt; and this is at least some evidence of that inadequacy of price against which a court of equity will relieve. In this case the judge remarked that from a careful reading of the record he was convinced that there was an understanding that, although the deed was absolute on its face, it was to be regarded only as a means of better securing the appellant's debt, and that the surplus to arise from the sale of the property after payment of the mortgagee's debt was to be accounted for to the appellee. Surely there were sufficient reasons in this case for a decree in favor of the appellee without referring to her distress and vexation, which reference was wholly unnecessary. All debtors probably are distressed when their property has to be sold for the payment of their debts; but distress and anxiety on account thereof afford, of themselves, no ground for equitable interposition.

There is no doubt that in equity a conveyance, whatever form it may assume, will be treated as a mortgage whenever it appears to have been taken as a security for an existing debt or a contemporaneous loan; and the inclination of the courts is, in doubtful cases, so to treat it and allow the grantor to redeem.

In the case of *Hinkley* v. *Wheelwright*, 29 Md. 348, the court says: "Nor does the fact that parties stand in the relation of mortgagor and mortgagee prevent their dealing with each other as vendor and purchaser of the equity of redemption. Such transactions will not be set aside unless for manifest unfairness or inadequacy of consideration."

In *Hicks* v. *Hicks*, 5 Gill & J. 85, it was said by the court that a mortgagee may become the purchaser of the equity of redemption if he does not make use of his incumbrance to influence the mortgagor to part with his property at less than its value.

*Lord* Redesdale, in the case of *Webb* v. *Rorke*, 2 Sch. & Lef. 673 (which was a case in which the bill prayed that a lease for 999 years, of 29 acres of land which had been mortgaged to Rorke, who subsequently took the said lease from the mortgagor, might be brought into court, together with the mortgage deeds and bonds, and that the defendant might be decreed to reassign the lease to the plaintiff, and that the same might be decreed void, and that the defendant might account for the real value of the lands from the date of the lease), in decreeing in favor of the plaintiff, remarked : "Another objection was that this decision may tend to impeach dealings between mortgagor and mortgagee, for a sale of the equity of redemption. But to this," he says, "a good answer was given at the bar. The cases are totally different, the parties stand in a different relation ; if there be two persons ready to purchase,—the mortgagee and another,— the mortgagor stands equally between them ; and if the mortgagee should refuse to convey to another purchaser, the mortgagor can compel him, by applying the purchase money, to pay off the mortgage. It can therefore only be for want of a better purchaser that the mortgagor can be compelled to sell to the mortgagee." He says, however, that "courts view transactions even of that sort between mortgagor and mortgagee with considerable jealousy, and will set aside sales of the equity of redemption where, by the influence of his incumbrance, the mortgagee has purchased for less than others would have given, and there were circumstances of misconduct in his obtaining the purchase."

It was said in *Russell* v. *Southard*, 53 U. S. 12 How. 154, 13 L. ed. 933, and note, in referring to strong expressions by judges, in some of the cases of dealings between mortgagor and mortgagee, that strong expressions with reference to the particular facts under consideration, however often repeated by subsequent writers, cannot safely be taken as fixing an abstract rule.

"We think," says the court, "that, inasmuch as the mortgagee in possession may exercise an undue influence over the mortgagor, especially if the latter be in needy circumstances, the purchase by the former of the equity of redemption is to be carefully scrutinized when fraud is charged; and that only constructive fraud, or an unconscientious advantage which ought not to be retained, need be shown to avoid such a purpose. But we are unwilling to lay down a rule which would be likely to prevent any prudent mortgagee in possession, however fair his intentions may be, from purchasing the property, by making the validity of the purchase depend on his ability afterwards to show that he paid for the property all that any one would have been willing to give. We do not deem it for the benefit of mortgagors that such a rule should exist."

The Farmers' Bank was not a mortgagee in possession at the time the conveyance was made to it by Walker and wife.

The doctrine upon this subject is very clearly stated in the case of *Alexander* v. *Rodriguez*, 79 U. S. 12 Wall. 339, 20 L. ed. 410, by *Mr. Justice* Swayne, in delivering the opinion of the court. He says: "The law upon the subject of the right to redeem where the mortgagor has conveyed to the mortgagee the equity of redemption is well settled. It is characterized by a jealous and salutary policy. Principles almost as stern are applied as those which govern where a sale by a *cestui que trust* to his

trustee is drawn in question. To give validity to such a sale by a mortgagor, it must be shown that the conduct of the mortgagee was, in all things, fair and frank; and that he paid for the property what it was worth. He must hold out no delusive hopes; he must exercise no undue influence ; he must take no advantage of the fears of poverty of the other party. Any indirection or obliquity of conduct is fatal to his title. Every doubt will be resolved against him. Where confidential relations and the means of oppression exist, the scrutiny is severer than in cases of a different character. The form of the instruments employed is immaterial. That the mortgagor knowingly surrendered and never intended to reclaim is of no consequence. If there is vice in the transaction, the law, while it will secure the mortgagee his debt, with interest, will compel him to give back that which he has taken with unclean hands. Public policy, sound morals, and the protection due to those whose property is thus involved, require that such should be the law."

It has been truly remarked by Pomeroy, in his Equity Jurisprudence, vol. 3, p. 146, that "in no other department has the equity jurisprudence, as administered in this country, departed so widely from that administered in England, as in the department that is concerned with mortgages, and the respective rights, liabilities, and remedies of the mortgagor and the mortgagee." "No correct notion," he says, "can be obtained of equity, as it now exists within the United States, without an accurate and full appreciation of these differences. At the common law the ordinary mortgage was, to all intents and purposes, a conveyance of the legal estate. A mortgage in fee immediately vested the mortgagee with the legal title, subject, however, to be defeated by the mortgagor's performing the condition by paying the money upon the prescribed pay-day."

In Delaware a mortgage as between the mortgagor and mortgagee so long as the former continues in possession of the mortgaged premises (which was Walker's situation) is merely a security for the payment of money, and does not absolutely convey the legal title to the premises, but is a lien on the property, of so high a nature that it is not devested by a sale on judgments subsequently obtained against the mortgagor, yet if the mortgagee is in possession under the mortgage, and the condition of it be broken, it is no longer in the power of the mortgagor, nor of any one claiming his title by virtue of a sale on such a judgment, to recover the possession in ejectment. His only right in such a case is to redeem the premises by paying the mortgage.

A mortgage in this state, being but security for the payment of a debt, creates no trust and establishes no fiduciary relation; the mortgagee has but a chose in action. *Cooch* v. *Gerry*, 3 Harrington, 282; *Hall* v. *Tunnell*, 1 Houston, 326; *Cornog* v. *Cornog*, 3 Del. Ch. 416.

Such being the nature of a mortgage, and such being the relations between mortgagor and mortgagee in this state, we must consider the allegations of the bill and answer in the cause and examine the evidence in the cause and apply the principles of equity, as judicially declared, to that evidence, so as to arrive at a just conclusion in respect to the controversy between the parties.

The bill expressly charges that the deed bearing date the 22d day of February, 1883, and executed by the complainant and his wife to the Farmers' Bank, was procured by deception and fraud; and that had not the complainant and his wife been deceived, he would never have made an absolute deed to the bank; and that he believes his wife, Eliza S. Walker, would never have joined with him in executing the said deed had she fully understood the nature and purport of the said deed,—

that it was contrary to the understanding of the complainant and his wife, when they made and executed the deed, that it should be an absolute deed in fee simple.

The bill alleges that the president, directors, and company always insisted, before the execution of the deed by him and his wife, that all they wanted was their actual debt, and gave him to understand by their acts and conduct that they would exact nothing more; that the deed to the bank by Walker and wife was intended by them to be a deed to the bank for the payment of Walker's indebtedness, and was intended by them to be only a deed of trust for the sole and only purpose of liquidating and discharging Walker's indebtedness to the bank; that certain directors of the said bank frequently, in presence of said Walker and wife, insisted that all the said bank wanted was its actual debt, and that the bank did not wish or desire Walker's property for speculative purposes; and that said language was employed by the agents, officers, and directors of the bank to get Walker and his wife to make an absolute deed in fee simple to the bank; that the bank accepted the deed as a deed of trust from Walker and his wife for the sole and only purpose of discharging Walker's said indebtedness; and that the bank would pay over to Walker whatever surplus there might be after said indebtedness was fully paid and discharged. Such at least is the contention of the complainant.

If these allegations and charges of the bill are proved to be true, there is an end of this case, and a decree should be entered in favor of the complainant, against the defendant, for the amount of the excess which the defendant has received from the sales of the land conveyed by the complainant Walker to the defendant, or the excess of the sales of the land over the amount of said indebtedness. In such case the defendant would be chargeable

with the amount of sales, whether received by it or not, because it would not avail it, in this court, to allege and prove that the sales made by it were upon credit, and that a large portion of the amount of sales had not in fact been received, owing to such credit having been given.

But the important questions are : Have these charges of the bill been proven? Are they supported by the evidence in the cause?

There has certainly been no contract proved between the complainant and the defendant prior to the meeting, at the house of Walker, between Walker and his wife and the two Mr. Ridgelys, the president and attorney for the bank, at which Mr. Watson and Harry A. Richardson were present. It is reasonable to infer from the testimony that prior to that time there had been conversations between one or both of the Ridgelys and Walker, in which Walker had suggested that sooner than a public sale should be made of his lands he would convey them to the bank; and that he had asked Edward Ridgely whether the bank would not sell his lands and pay over the surplus beyond his indebtedness to him.

There is no proof that both or either of them ever agreed to do so. Mr. Edward Ridgely states that such conversations and suggestions were made long before the meeting at Walker's house, and that the proposition was never seriously entertained. It seems from the testimony of both the Mr. Ridgelys that they had persistently urged Mr. Walker to make sale of his lands himself or by an agent, and thus pay off his indebtedness or greatly reduce it.

It is in proof that Mr. Walker on the —— day of December, 1882, through Harry A. Richardson, his agent, offered his lands at public sale in the town of Dover, which sale was well attended, and that after sell-

ing six parcels of said land the remaining parcels were withdrawn from sale, owing to the inability to obtain purchasers at an amount therefor such as Mr. Walker judged proper.

It was after the failure to realize from said sale a sufficient amount to pay Walker's indebtedness that the bank —as its attorney states in his testimony—seriously considered the propriety of taking from Mr. Walker a conveyance of his lands in payment of his indebtedness to it. The meeting at Walker's house was, if I mistake not, early in the first week of February following.

It appears from the testimony, that that meeting was at the instance and upon the invitation of Mr. Walker, with a view of making arrangements as to his indebtedness to the bank. Walker submitted an estimate of what he supposed to be the value of his real estate, and assured the Messrs. Ridgely that it was more than sufficient to pay his indebtedness. They did not agree with him in opinion, and asserted that the bank would be the loser of a portion of their debt, by reason of the insufficiency of his real estate to pay it.

It is in proof, and uncontradicted, that Walker at that interview proposed to deed all his real estate remaining unsold, to the bank, with the exception of what is called the dry-house lot, which, for reasons stated by him, he would not include in the conveyance in discharge of his indebtedness.

They insisted that the dry-house lot should be included in the conveyance, and at first, as stated by Mr. Watson, declined to lay Mr. Walker's proposition before the board of directors of the bank, who were to meet that morning. After considerable contention as to whether the dry-house lot should or should not be included in the conveyance between Walker and the Ridgelys, they stated that they would lay Walker's proposition before the board of di-

rectors. It is proved that it was laid before the board, and that after some consideration,—it being considered that the costs of a sheriff's sale of the real estate of Walker would about equal in amount the sum which the bank would receive from a sale of the dry-house lot after paying prior mortgages and liens thereon—the board of directors of the bank agreed to accept Mr. Walker's proposition, and instructed their attorney to notify Mr. and Mrs. Walker thereof. He did so notify them immediately; and in pursuance of the agreement, afterwards, and perhaps the next day, set about preparing a deed of conveyance by Walker and wife to the bank for the nine parcels of land of Walker remaining unsold, exclusive of the dry-house lot.

After the preparation of the deed had been commenced, it is proved by the attorney of the bank that he received from Mrs. Walker, wife of William Walker, a note stating that she had reconsidered her determination about signing the deed, and that she would not sign the deed conveying Walker's land to the bank unless the bank would pay to her the surplus of sales of said land that should remain after discharging Walker's indebtedness to the bank. The preparation of the deed was thereupon suspended.

At the next meeting of the board of directors, the attorney of the bank stated to the directors that he had received such a note from Mrs. Walker. The note was shown to the directors, and, as proved in the cause, they unanimously rejected Mrs. Walker's proposition, and refused to accept a conveyance of the land upon the conditions proposed by her. They also as stated by Mr. Ridgely, the attorney, ordered him to proceed by *levari facias* and sell the lands of Mr. Walker for the payment of their debt.

The attorney states that he immediately informed Mr.

Walker and his wife of this action of the board of directors, and proceeded to act in conformity with the instructions of the bank. The third *levari facias* was issued, but proceedings under it, he states, were temporarily suspended at the instance of Mrs. Watson, a daughter of William Walker, until Harry A. Richardson who was absent from town, should return from New York.

Upon Mr. Richardson's return home he called upon the attorney of the bank, inquired what was the matter in the Walker business, and being informed of the situation of matters owing to the reception of the note from Mrs. Walker, and rejection of its terms by the bank, he (Richardson), as stated by Mr. Ridgely, told him to go on and prepare the deed and he would have it signed.

The deed was prepared and taken by Mr. Richardson to Walker's, and signed and executed by Walker and his wife and returned by Richardson to the attorney of the bank.

Some stress was laid in the argument upon the fact that Mr. Richardson stated that when he received the deed to be taken to Walker, Ridgely requested him to induce Walker and wife to sign it. Ridgely says he does not remember and does not believe he made that remark. It does not seem material, however, whether he did or not; for it does not appear in evidence that Mr. Richardson, the son-in-law, held out any inducement to Walker and wife to sign the deed. He expressly says that nothing was said about paying over a surplus to Walker and wife, but that he should not have advised a sale of all Walker's lands to the bank if it had not been to avoid a forced sale.

By forced sale Mr. Richardson, I suppose, must have meant a sale by the sheriff, under the *levari facias* which had been issued by the bank, on its judgment obtained

upon *scire facias* against Walker.   There can be no doubt that the bank had a perfect legal right to cause this writ to be issued on its judgment, and to have it promptly executed by the sheriff of Kent County, where Walker's lands were situate.   That was a right of the bank, to the exercise of which Mr. Walker had no legal right to object.   It was a right the exercise of which this court would have had no authority to prevent, if its restraining power had been invoked.   Nor is this the kind of incumbrance which the decisions above referred to contemplate, and which they declare a mortgagee in possession shall not use to obtain a conveyance from the mortgagor of his real estate.   It was but the employment of the prescribed form of legal process for making the money due by the defendant to the plaintiff on a judgment legally recovered in a court of law.

It is true this process is called a *levari facias*, and is executed upon specific lands instead of upon lands generally; but this in no wise affects the legality or the equity of its use where it is the prescribed and appropriate process.   A mortgagee may even purchase at his own sale without becoming a trustee for the mortgagor.   There is no difference in the testimony of Mrs. Watson, Harry Richardson, and the Messrs. Ridgely, in respect to the consideration of the deed executed by Walker and wife in favor of the bank.   It is true that Mrs. Watson and Mr. Richardson testify as to declarations made by both the Mr. Ridgelys during the interview at Walker's, as to the bank being a rich and powerful corporation and as to its being able to give better terms than Walker could give to the purchasers of his real estate; but it must be remembered, even if such declarations are taken to be proved, that the chief contention in that conversation was as to the value of Walker's real estate, and as to its sufficiency to pay his indebtedness to the bank, and

whether the dry-house lot should be included in any conveyance that might be made by Walker and wife to the bank, or whether the said lot should not be included therein.  Walker insisted that his other real estate was amply sufficient to discharge his indebtedness to the bank without a conveyance of that lot, and the Ridgelys contended that the whole of the real estate would not be sufficient to discharge said indebtedness and the bank would be loser by taking such conveyance.  Both the Ridgelys either denied that such declarations were made, or say that they do not remember to have made them; but whether made or not, a sufficient explanation of their meaning may be found in the contention as to the sufficiency or insufficiency of the property of Walker at a public sale to discharge his indebtedness to the bank.

Mrs. Watson says : "The deed which was subsequently agreed upon and made by the said Walker and wife to said bank was so made and given upon the express understanding that it was in discharge of the indebtedness of said Walker to said bank, and the assumption to pay the Bespham mortgage and the Pearson judgment."

The dry-house lot was omitted and left out of the deed, because it was made apparent that the said Walker and wife would not make a deed to the said bank unless it was so omitted ; and because it was shown that the costs of a sheriff's sale would equal, if not exceed, the amount which the bank would receive from a sale of the dry-house lot; and because she (Mrs. Watson) had advanced about half the money to build the house thereon.

No agreement between the two Mr. Ridgelys, two of the directors of the Farmers' Bank, and Mr. Walker, has been proved to have existed previous to the meeting at the house of Mr. Walker, spoken of by the witnesses, that the Farmers' Bank would take a conveyance of

Walker's real estate, sell the same and pay over the surplus of sales to Mr. Walker, after his indebtedness to the bank was discharged. No such agreement has been proved to have been made or mentioned by any of the parties present at said meeting ; and such an agreement is denied by the bank to have been made by it, or by any persons speaking for or on behalf of it. And such denial is also made by Dr. Ridgely, the president of the bank, and by Edward Ridgely, its attorney, witnesses in the cause ; but the inference, perhaps, is sought to be drawn from the declaration said by Mrs. Watson and Mr. Richardson to have been made, both by Dr. Ridgely and Edward Ridgley, that "all the bank wanted was its debt," and the remark made by Mr. Walker, he wanted the bank to be paid all he owed it.

But it would be doing violence to the language used on that occasion to establish a fact by inference, from language not remembered or denied, to support a theory, or establish as a fact that which is conclusively disproved by other controlling facts and circumstances.

It is proved that the board of directors of the bank, after accepting the proposition of Mr. Walker, and after their acceptance had been notified to Mr. and Mrs. Walker, refused to accede to Mrs. Walker's proposition subsequently made to Edward Ridgely, attorney for the bank, that the bank should agree to pay over to her any surplus of sales of Walker's lands which should remain after the payment of Walker's indebtedness to the bank, and that said directors unanimously rejected said proposition ; and their rejection thereof was notified to both Mr. and Mrs. Walker before the execution of said deed.

There is a very significant fact connected with this matter, which is worthy of consideration. It nowhere appears in the bill or proofs in this cause that Mr. Walker ever refused to execute a deed to the bank in conformity

with his proposition to the bank, and which was accepted by it. It nowhere appears that he ever reconsidered his determination to sign such a deed.

The whole difficulty in respect to the question of paying over any surplus that might remain after the payment of Walker's indebtedness to the bank to Mrs. Walker, and the delay in the preparation and execution of the deed, seems to have arisen out of the note addressed by Mrs. Walker to the attorney of the bank, and which he laid before the board of directors at their subsequent meeting.

This is said, not to censure the action of Mrs. Walker. She, as a prudent and sensible woman and wife, desired all the advantage of any contingency that might arise in the disposition of her husband's property by the bank. For this she certainly was not to be blamed, but to be commended. The result of this action, however, was the express refusal of the directors of the bank to agree to the proposition, when formally made, to pay over any such excess of surplus to Mrs. Walker or any one else. And its nonagreement thereto rests, not in conjecture or inference, but rests in positive proof.

I do not think, therefore, on the proofs in this cause, that the deed from Walker and wife was procured by deception and fraud, as charged in the bill. I do not see how it can possibly be that when the complainant and his wife executed the deed, they should not have considered it an absolute deed in fee simple; but I can readily perceive how it might have been possible for Mr. Walker, who had formerly, and for many years, been a depositor in said bank, and friendly in his personal relations with the directors, to have indulged the hope that there would be a surplus from the sale of the property conveyed to the bank, after paying his indebtedness to it, and that the bank might (in the exercise of a generous

spirit) pay over to him such surplus. But generosity, simply as such, is not an enforceable equity; its tribunal is in the human breast, and not in the courts of earth.

But although the directors of the bank might have positively refused to pay over to Walker any surplus of sales of the real estate conveyed by him and his wife to the bank, which might remain after the payment of Walker's indebtedness to the bank, yet, if the principles of equity and good conscience, as administered in equitable tribunals, make it inequitable that the bank should retain such surplus, and not pay it over to Walker, this court will decree that it shall do so, notwithstanding such refusal by the bank.

Was there manifest unfairness by the bank in procuring the deed from Walker and wife? Was Mr. Walker compelled in any manner to sell to the bank otherwise than from the want of a better purchaser? Did he sell to the bank for less than others would have given? Was the consideration for the conveyance inadequate and coupled with unfairness or oppression in any respect?

These several questions must, in accordance with the proofs in this cause, be answered in the negative.

As to inadequacy of price, there is no proof that any greater amount had ever been offered for the several parcels. And the attempt to dispose of them by public sale by Walker, and the inability to realize an amount greater than that of the indebtedness to the bank, or even that amount, precludes the idea of such inadequacy of price, even if that is to be considered when not coupled with unfairness in a sale.

I think it is manifest, from the reading of the testimony in this cause, that most, if not all, of the alleged surplus of sales was caused by the personal exertions and perseverance of some of the directors of the bank, and especially to those of Dr. Ridgely, the president. His

keen business tactics were displayed in his negotiations with Mr. Everests, the purchaser of the millpond tract, by which $1,000 were secured beyond the purchasers' *ultimatum*, constituting nearly one half of the surplus of sales remaining after deducting the amount of Walker's indebtedness to the bank, and the payment of the Bespham mortgage, and the Pearson judgment. Mr. Walker would have had no right to demand the exercise of such vigilance on his own part, and could not claim a right to appropriate to himself its advantages.

There certainly was no expressed trust in this case. I do not consider that an implied one or a constructive trust arises or can be created from or out of the evidence in the cause.

The decree is therefore in favor of the defendant.